1  Scott B. Cooper (State Bar No. 174520)
2  **THE COOPER LAW FIRM, P.C.**
   2030 Main Street, Suite 1300
3  Irvine, California 92614
4  Telephone:  (949) 724-9200
   Facsimile:  (949) 724-9255
5
6  Counsel for Plaintiffs

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11 JOAQUIN DE TERESA and        CASE NO. **SACV10-01830 DOC (ML**Gx)
   ANA ALICIA AGUILAR DE TERESA,
12                               **COMPLAINT FOR:**
          Plaintiffs,
13                               **(1) Negligence / Breach of Duty**
14 vs.                          **(2) Breach of Fiduciary Duty**
                                **(3) Common Law Fraud**
15                              **(4) Aiding and Abetting Fraud /**
   MATTHEW R. JENNINGS;         **Participation in a Fraudulent Scheme**
16 ROCKWALL HOLDINGS, INC.;     **(5) Conversion and Misapplication of**
   WESTMOORE CAPITAL GROUP,     **Fiduciary Property and Conspiracy**
17 LLC.; WESTMOORE              **(6) Securities Fraud**
   MANAGEMENT, LLC;             **(7) Control Person Liability**
18                              **(8) Violations of §12(a)(1) of the**
   WESTMOORE LENDING            **Securities Act**
19 OPPORTUNITY FUND, LLC; and   **(9) Violations of the California**
20 WESTMOORE SECURITIES, INC.,  **Corporations Code**
                                **(10) Civil Conspiracy**
21        Defendants.           **(11) Fraudulent Conveyance under**
22                              **Cal. Civ. Code§ 3439.05**
                                **(12) Breach of Contract /Suit on a**
23                              **Note**
24                              **(13) Action to Dissolve Rockwall**
                                **Holdings, Inc.**
25
26                              **DEMAND FOR JURY TRIAL**
27
28

─────────────────────────────────────────────

                COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by and through their undersigned attorneys, allege as follows based on personal knowledge and based on information and belief:

## INTRODUCTION AND OVERVIEW

This is a securities fraud and breach of fiduciary duty case. Plaintiffs are elderly investors from Mexico. Defendants Matthew Jennings and Westmoore Securities, as investment advisers and securities brokers, advised and directed Plaintiffs to invest their retirement savings in high risk, volatile debt and equity investments in companies owned and/or ultimately controlled by Defendant Jennings, including Defendants Westmoore Holdings, Westmoore Management and Westmoore Capital. None of those investments fit Plaintiffs' investment profile and said investments were not suitable for Plaintiffs. All of those investments are virtually worthless now. Moreover, Defendant Jennings is now a named defendant in a civil lawsuit filed by the U.S. Securities & Exchange Commission ("SEC"), where he and his various Westmoore companies are accused of having orchestrated a $50 million Ponzi scheme. Plaintiffs now bring the following claims.

### I.

## SUBJECT MATTER JURISDICTION/VENUE

1.      This Court has original diversity jurisdiction over this proceeding pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000.00 and all of the Plaintiffs are citizens or subjects of Mexico and Defendants are citizens and residents of the states of California, Nevada, and Delaware. Moreover, jurisdiction arises under the federal securities laws, specifically Section 27 of the Exchange Act.

2.      Venue is proper in this Court under 28 U.S.C §1391(a)(1) and (2) because some Defendants reside in, and all or a substantial portion of the events occurred in, Orange County, California.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

## II.

## **PARTIES**

3.     Plaintiffs are all individuals who are citizens and residents of the Republic of Mexico.

4.     Defendant Matt R. Jennings, an individual, is a citizen and resident of California.

5.     Defendant Rockwall Holdings, Inc. fka Westmoore Holdings, Inc., is a Nevada Corporation with its principal place of business located in California.

6.     Defendant Westmoore Capital Group, LLC is a Delaware Limited Liability Company, with its principal place of business located in California.

7.     Defendant Westmoore Management, LLC is a California Limited Liability Company with its principal place of business located in California.

8.     Defendant Westmoore Lending Opportunity Fund, LLC is a California Limited Liability Company with its principal place of business located in California.

9.     Defendant Westmoore Securities, Inc. aka Westmoore Trading Co. is formerly a registered broker/dealer with FINRA which terminated or withdrew its registration on January 29, 2009, and is an Ohio Corporation with its principal place of business located in California.

## III.

## **FACTS**

10.     Plaintiffs were introduced in late 2005 or early 2006 to Defendant Matt Jennings ("Jennings") who at the time was an SEC and NASD registered broker dealer and investment adviser.   In late 2005 or early 2006, Jennings traveled to visit Plaintiffs at their home in Mexico City.   Jennings represented to Plaintiffs that he had years of experience as an investment manager and that he controlled a portfolio of companies that bought, managed, grew and then sold other companies for a profit.   Jennings offered Plaintiffs the opportunity to invest

3

in his group of companies and promised high rates of return.  He also represented to Plaintiffs that any investment in his portfolio of companies was low risk and guaranteed by the underlying assets of the group, which included various pieces of real estate and restaurants and interests in other operating companies.  Jennings repeatedly emphasized the profitability of his companies and the low risk an investment in his companies represented.

## A.    Plaintiffs' Investments With Defendants

11.    Based on these and other representations, Plaintiffs made the decision to invest with Jennings and his companies.  But Plaintiffs did not target their investments; rather they allowed Jennings, a registered broker and investment adviser, to direct their investments for them.   In other words, as to each and every investment that Plaintiffs made as alleged herein, Plaintiffs merely wrote the check but Jennings made the decision where the money was invested and in which amounts.   In that sense, Jennings assumed 100% discretionary authority over Plaintiffs' investments.    Plaintiff Joaquin de Teresa, who does not read or understand English, relied entirely on Jennings and his promises and representations in making the decision to invest a growing amount of money with Jennings and his companies.

12.    Plaintiffs eventually made several investments with Jennings and his companies, totaling millions of dollars.   All of the securities offerings were offered through Defendant Westmoore Securities Inc., an SEC licensed broker/dealer and member of FINRA f/k/a NASD.  Jennings, acting as a broker with discretionary authority and/or as an investment adviser, advised Plaintiffs to make each and every one of the following investments:

13.    In May 2006, at Jennings' direction, Plaintiff Joaquin de Teresa invested $250,000 in the form of a loan to one of Jennings' companies, Westmoore Food & Entertainment LLC, via a Working Capital Loan Agreement dated May 3, 2006.   In May 2007, Jennings persuaded Plaintiff to roll over that

investment into a $250,000 investment in Westmoore Capital Group LLC – Series A "Working Capital Loan".   Defendant Westmoore Capital Group LLC signed a Secured Promissory Note to Plaintiff dated May 15, 2007, in the amount of $250,000 (hereinafter "WestCap Note 1").   The WestCap Note 1 promised to pay interest at the rate of 1.5% per month, and was due to mature in May 2008.   That note is now in default.   Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

14.     In June 2006, at Jennings' direction, Plaintiff Joaquin de Teresa invested an additional $500,000 in the form of a loan to Westmoore Food & Entertainment LLC via a "Working Capital Loan Agreement" dated June 22, 2006.   After an extension of the term, on June 23, 2007, Jennings persuaded Plaintiff to roll over that investment into a $500,000 investment in Westmoore Capital Group LLC – Series A "Working Capital Loan". Defendant Westmoore Capital Group LLC signed a Secured Promissory Note to Plaintiff dated June 23, 2007, in the amount of $500,000 (hereinafter "WestCap Note 2").   The WestCap Note 2 promised to pay interest at the rate of 1.5% per month, and was due to mature in June 2008.   That note is now in default.   Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

15.     On September 21, 2006, at Jennings' direction, Plaintiff Joaquin de Teresa invested an additional $500,000 in the form of a loan to Westmoore Management via a "Working Capital Loan Agreement" dated September 21, 2006, with a one year term.   On October 11, 2007, Jennings persuaded Plaintiff to roll over that investment into a $500,000 investment in Westmoore Capital Group LLC – Series A2.   Defendant Westmoore Capital Group LLC signed a Secured

Promissory Note to Plaintiff dated October 23, 2007, in the amount of $500,000 (hereinafter "WestCap Note 3"). The WestCap Note 3 promised to pay interest at the rate of 1.5% per month, and was due to mature in October 2008. That note is now in default. Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal state and federal securities laws.

16.   On September 26, 2006, at Jennings' direction, Plaintiff Joaquin de Teresa invested an additional $500,000 in the form of a loan to Westmoore Management LLC. Defendant Westmoore Management signed a Secured Promissory Note to Plaintiff dated September 26, 2006, in the amount of $500,000. The Westmoore Management Note promised to pay interest at the rate of 2% per month, was secured by a subordinated lien on Jennings' house, and was due to mature in September 2007. That note is now in default. Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

17.   On June 15, 2008, Jennings persuaded Plaintiff to invest an additional $250,000 as an investment in Westmoore Capital Group LLC – Series A "Working Capital Loan". Defendant Westmoore Capital Group LLC signed a Secured Promissory Note to Plaintiff dated June 15, 2008, in the amount of $250,000 (hereinafter "WestCap Note 4"). The WestCap Note 4 promised to pay interest at the rate of 5% per month, and was due to mature in 60 days after funding. That note is now in default. Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

COMPLAINT AND DEMAND FOR JURY TRIAL

18.     On July 9, 2008, Jennings persuaded Plaintiff to invest an additional $400,000 as an investment in Westmoore Capital Group LLC – Series A "Working Capital Loan".   Defendant Westmoore Capital Group LLC signed a Secured Promissory Note to Plaintiff dated July  9, 2008, in the amount of $400,000 (hereinafter WestCap Note 5").   The WestCap Note 5 promised to pay interest at the rate of 3.33% per month, and was due to mature in 90 days after funding.   Said WestCap Note 5 is secured by a "first priority lien" on 2 million shares of China Tel Group Inc. owned by Westmoore Capital Group LLC.   That note is now in default.   At the time that Jennings persuaded Plaintiff to make the investment in WestCap Note 5, Jennings knew that the Westmoore companies were in a distressed financial condition and he intended to use Plaintiff's money to pay off other investors their principal and interest in order to keep the scheme afloat.    Moreover, Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

19.     On January 15, 2008, Jennings persuaded Plaintiff Joaquin de Teresa to invest $2 million to buy 2 million shares of Westmoore Holdings Inc.  None of these shares were registered with the SEC nor with the California state securities regulatory authority.    In purchasing these shares, Plaintiff was instructed to, and did, wire his money to the Wells Fargo trust account of Westmoore Holdings and Jennings' law firm, Horwitz, Cron & Jasper, on or about January 15, 2008. Plaintiff was never informed that these shares should have been registered and that the sale of these unregistered securities violated state and federal securities laws.

20.     In September 2006, at Jennings' direction, Plaintiff Ana Alicia de Teresa invested $50,000 with Jennings in the form of a loan to Westmoore Management LLC via a "Working Capital Loan Agreement" dated September 21, 2006.  After an extension of the term, on September 29, 2007 Jennings persuaded

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff to roll over that investment into a $50,000 investment in Westmoore Lending Opportunity Fund LLC. Defendant Westmoore Lending Opportunity Fund LLC signed a Secured Promissory Note to Plaintiff dated September 29, 2007. That note is now in default. Plaintiff was never informed by Defendants prior to her purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

21.   In September 2006, at Jennings' direction, Plaintiff Ana Alicia de Teresa invested an additional $267,610 with Jennings in the form of a loan to Westmoore Management LLC via a "Working Capital Loan Agreement" dated September 21, 2006. After an extension of the term, on September 29, 2007 Jennings persuaded Plaintiff to roll over that investment into a $267,610 investment in Westmoore Lending Opportunity Fund LLC. Defendant Westmoore Lending Opportunity Fund LLC signed a Secured Promissory Note to Plaintiff dated September 29, 2007. That note is now in default. Plaintiff was never informed by Defendants prior to her purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

22.   On July 18, 2008, Jennings directed Plaintiff Ana Alicia de Teresa to invest an additional $300,000 as an investment in Westmoore Capital Group LLC – Series A "Working Capital Loan". Defendant Westmoore Capital Group LLC signed a Secured Promissory Note to Plaintiff dated July 18, 2008, in the amount of $300,000 (hereinafter WestCap Note 6"). That note is now in default. Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

COMPLAINT AND DEMAND FOR JURY TRIAL

23.    On November 19, 2008, Jennings directed Plaintiff Ana Alicia de Teresa to invest an additional $25,000 as an investment in Westmoore Management LLC.  Defendant Westmoore Management LLC signed a Secured Promissory Note to Plaintiff dated November 19, 2008, in the amount of $25,000. That note is now in default.  Plaintiff was never informed by Defendants prior to his purchase that this Note constituted an investment contract and a security that should have been registered and that the sale of this unregistered security violated state and federal securities laws.

24.    In January, 2008, Jennings persuaded and directed Plaintiff Ana Alicia de Teresa to invest $350,000 to buy 350,000 shares of Westmoore Holdings Inc.  None of these shares were registered with the SEC nor with the California state securities regulatory authority.  In purchasing these shares, Plaintiff was instructed to, and did, wire this money to the Wells Fargo trust account of Westmoore Holdings and Jennings' law firm, Horwitz, Cron & Jasper, on or about January 2008.  Plaintiff was never informed that these shares should have been registered and that the sale of these unregistered securities violated state and federal securities laws.

25.    In late 2008 and/or early 2009 the Westmoore companies (Westmoore Capital, Westmoore Management and Westmoore Lending Opportunity Fund, LLC) stopped making payments on the various notes described above and the notes went into default.  Plaintiffs thereafter made demand on the Westmoore debtor entities to pay Plaintiffs on the Notes and to buy back their shares in Westmoore Holdings.  Plaintiffs also held several meetings with Jennings throughout 2009 concerning his plans to restructure the Westmoore entities in order to be able to pay Plaintiffs.  Throughout 2009 Jennings repeatedly assured Plaintiffs that he was turning things around at Westmoore and would soon be able to repay them not only their principal investment, but also accrued interest. He also assured them that he had buyers for their shares in Westmoore Holdings,

COMPLAINT AND DEMAND FOR JURY TRIAL

1   and that, at any rate, Westmoore Holdings was a strong, viable company that

2   owned a portfolio of operating companies, including companies involved in the oil

3   and gas industry.

4        26.    In March 21, 2010, Plaintiffs were relieved to receive an e-mail from

5   Jennings announcing three options for investors. The first option offered investors

6   "front-of-the-line preference" during repayment in exchange for their agreement

7   to significantly reduce their accrued interest or return. The second option promised

8   investors the full amount of principal and interest, but only after the first group has

9   been paid. The last option would permit investors to "share 50% of the upside" of

10  the sale of Westmoore's holdings. Jennings offered his personal option that

11  choosing this option "would allow investors to capitalize on recent and future

12  success." Plaintiffs immediately informed Jennings that they wanted to elect the

13  first option – for an immediate pay out.

14       27.    Despite several more conversations with Jennings, nothing ever

15  materialized concerning Plaintiffs' election of the first option of immediate

16  payout.   Plaintiffs never received any pay out whatsoever from Jennings or his

17  companies. Jennings thereafter just kept making vague promises about turning his

18  companies around and eventually repaying Plaintiffs if they would only hold on

19  and wait a little longer.

20       28.    Then on June 15, 2010, the SEC filed an enforcement action against

21  Jennings and several of the Westmoore entities.   The SEC accused Jennings of

22  running a Ponzi scheme and using investors' money to pay phantom interest to

23  other investors and to pay out principal to exiting investors.   The SEC's

24  allegations include the following, all of which are directly incorporated herein.

25  **B.    Jennings' Fraudulent Westmoore Scheme**

26       29.    As an officer, director, and/or owner of nearly all Westmoore entities,

27  including those named as Defendants herein, Jennings managed the entire

28  Westmoore enterprise. As such, he had ultimate authority over the various

COMPLAINT AND DEMAND FOR JURY TRIAL

Westmoore entity bank accounts, including approving payments of principal and interest to investors and transfers of funds between the various Westmoore entities.

30.   Westmoore Management formed the hub of the Westmoore enterprise. The company's accounting department provided management and accounting services for almost all of the Westmoore entities. Those accounting functions included, among other things, monitoring the daily activity in, and balance of, each entity's bank account, issuing checks to investors or vendors, moving funds among the Westmoore bank accounts, and preparing monthly financial statements for Westmoore. Jennings used a daily accounting report summarizing balances in the various Westmoore bank accounts to determine whether and when to transfer or pay out funds.

31.   Because at least 70% to 75% of funds deposited with Westmoore were from investors and not from revenue from business operations, throughout 2008, Westmoore did not generate sufficient revenue to pay the interest and principal due to investors.

32.   The Westmoore accounting department's general practice was to deposit funds from investors in, and disburse funds to investors from, the bank account of the entity offering the investment. In 2008, however, Westmoore accounts regularly had insufficient funds to cover checks issued to investors for principal or interest payments. Under those circumstances, Jennings instructed the accounting department to locate cash in the bank accounts of other Westmoore entities and transfer the necessary funds to the bank account with insufficient funds. In cases where the accounting department could not identify sufficient funds to cover the checks, Jennings directed the accounting department to consult with him so that he could decide which, if any, of the issued checks to cover and from which accounts to transfer the available funds.

COMPLAINT AND DEMAND FOR JURY TRIAL

33.    Neither Jennings nor the accounting department had any regard for the source of funds that were transferred. Indeed, Jennings and the accounting department treated the various Westmoore accounts as one integrated account from which funds, regardless of their source, could be transferred and used as necessary to make various payments, including investors' principal and interest. In that sense, all of the Westmoore investors' funds, including Plaintiffs' funds, were comingled and pooled together -- thereby creating a single, integrated investment company.    Said investment company, operating simply as "Westmoore", was never registered as such with the SEC in violation of the Investment Company Act.    All investors, in reality, were invested in the Westmoore pooled investment company fund.

34.    By the last three months of 2008, "almost all" of the funds being deposited into Westmoore accounts were from investors, as opposed to revenue from business operations. Moreover, by October 2008, Westmoore increasingly bounced interest and principal checks to investors because it received fewer new investor dollars that it could use to pay existing investors. In 2008, Westmoore received over $53 million of new money from investors, of which at least $8.7 million was used to pay the principal and returns of old investors.  Plaintiffs alone invested over $3.5 million in Westmoore entities in 2008.

35.    Jennings knew in 2008 that investor funds were being used to pay the interest and principal payments of exiting investors because he controlled Westmoore and the movements of funds within it. Specifically, Jennings approved transfers of new investor funds from one Westmoore entity bank account to another account to cover interest and principal payments.

36.    Beginning in mid-2008, some of Westmoore's accountants related their concern to Jennings that Westmoore's business was unsustainable. Those accountants had grown worried that the high interest rates – as much as 5% every two weeks – Westmoore had promised to pay investors coupled with the large

12
COMPLAINT AND DEMAND FOR JURY TRIAL

notes payable balance (i.e., the overall amount of principal Westmoore owed to investors) would require Westmoore to make exorbitant monthly interest payments that it could not afford. Each time, Jennings dismissed the accountants' concerns because Westmoore had an investment in a Chinese wireless telecommunications business – ChinaTel -- that would "eventually" provide substantial revenues.

37.    In the fall of 2008, Westmoore's accounting manager told Jennings that the high interest rates Westmoore was paying investors, Westmoore's large notes payable balance, and the fact that registered representatives offering and selling Westmoore's investments were taking commissions when investors extended the terms of their investments or "rolled over" their investments, meant that Westmoore would run out of money unless it continued to receive new investment dollars. Jennings also dismissed these concerns and stated that Westmoore had investments in the works. The accounting manager subsequently provided Jennings with a spreadsheet reflecting that Westmoore's note payable balance was approximately $50 million. He also provided Jennings with an analysis reflecting a deficit of at least $1,000,000.00 over the previous three-month period created by the amounts Westmoore had paid out compared to the smaller amounts it had brought in from all sources.

38.    The following transaction illustrated Jennings' control over, and knowledge of, Westmoore's bank accounts and its use of new investor funds to pay old investors. On November 10, 2008, pursuant to a request dated November 5, 2008, the accounting department issued a $196,700 payment of principal and interest to an investor in Westmoore Capital Group, Series A, a subsidiary of Westmoore Management. Jennings directly authorized this payment because he knew of an incoming wire "that should cover all [sic]." In fact, Jennings funded that payment with proceeds from new investors in two other Westmoore offerings: a wire transfer of $175,000 to Westmoore Capital Management ("WCM") and a

$100,000 check to Westmoore Lending Opportunity Fund, a subsidiary of Westmoore Capital, Inc. Once these funds were deposited in the respective bank accounts for WCM (which used Westmoore Capital's bank account) and Westmoore Lending Opportunity Fund, nearly all of the money was then transferred to Westmoore Management's bank account. That account, which had an opening balance of -$15,218.37, went to a balance of approximately $258,781.63. Then, Westmoore transferred $197,000 of that balance to the Westmoore Capital Group, Series A bank account, which had an opening balance of $94.17. This transfer, funded almost entirely through offering proceeds received from new investors in other offerings, funded the principal and interest payment to the investor cashing out his investment.

39.   In 2008, Westmoore and its subsidiaries raised funds through unregistered offerings of stock, membership units, and promissory notes (collectively, the "Westmoore Offerings"). The offerings were created at Jennings' direction. He approved each of the offering documents before they were finalized. He also conducted sales meetings with or sent emails to the registered representatives who offered and sold Westmoore's investments to inform them about the terms of the offerings, the performance of the entities, and other information that the representatives would then communicate to prospective investors.

40.   Registered representatives, including Jennings, typically told investors that Westmoore's business was to identify and invest in growth companies. The representatives stated that the offerings were good investments because the owners, and many representatives, invested their own money in the offerings and Westmoore had a track record of success. Neither the registered representatives nor the offerings materials disclosed to investors that Westmoore would use new investor funds to pay the returns of existing investors.

COMPLAINT AND DEMAND FOR JURY TRIAL

41.    The various Westmoore Offerings shared certain characteristics: high periodic returns, false and inadequate representations about the use of proceeds, and misleading representations regarding the performance of Westmoore's businesses.

42.    Westmoore and Jennings created offerings that promised exorbitant short-term returns, which created added pressure on them to sustain the scheme. Investors were promised the following returns:

- **Westmoore Capital Management Inc:** two note offerings, one which paid 5% for each two-week term (140% annually) and another which offered a 10% return for each 60-day term (over 60% annually). WCM also issued two stock offerings both of which promised 10% annual return plus a pro-rata share of 50% of net income, paid quarterly, on investors' equity investment.

- **Westmoore Investment:** one note offering that paid a 3.33% monthly return (40% annually) over a 90-day term.

- **Westmoore Management:** two note offerings, one which paid 7% every two weeks (91% annually) over a 90-day term and another which a 10% annual return paid quarterly.

43.    Westmoore created private placement memoranda ("PPMs") for distribution to new and prospective investors. These PPMs included, among other things, the following disclosures regarding the use of offering proceeds:

- **WCM (Equity Offerings):** "for general purposes to implement [the company's] plan to become a leading alternative asset manager that also provides advisory services to a global clientele."

- **WCM (Note Offering):** "Provide working capital and development costs, to finance the legal and other costs associated with operations of Westmoore Capital Management, Inc." WCM never began operations.

COMPLAINT AND DEMAND FOR JURY TRIAL

- **Westmoore Investment:** "Proved working capital, development costs, and finance the legal and other costs" related to a merger in Westmoore Investment had a financial interest. The merger was not completed.

- **Westmoore Management:** "Provide working capital and development costs, to finance the legal and other costs associated with the operations of Montana Legend, and to acquire controlling interest in a publicly traded entity." Montana Legend was an entity managed by Westmoore Management that produced organic beef products and ultimately ran out of funding in 2008.

44.   The PPMs failed to disclose that Westmoore would use offering proceeds to pay the returns of existing investors. Plaintiffs invested in Westmoore Management, in part, based on Jennings representations about Montana Legend and its successful relationship with the Chipotle restaurant chain, only to discover later that Montana Legend had not reached its potential because of a lack of credit and, indeed, that said company required a $5 million cash infusion to become viable.

45.   Moreover, Jennings made false oral representations about the use of the proceeds he received from Plaintiffs via their investments in the Westmoore entities. Jennings repeatedly told Plaintiffs their money would be used to purchase additional companies and to grow those companies. These representations were false because Jennings and Westmoore instead diverted Plaintiffs' proceeds to pay existing investors in other Westmoore offerings.

46.   Jennings did not provide investors, including Plaintiffs, with an accurate picture of Westmoore's overall business prospects in 2008. Although many of the PPMs included a section entitled "Risk Factors", these disclosures had little or no value because of Westmoore's failure to disclose the Ponzi-like nature of the investments.   At no time did Jennings or anyone else at Westmoore

COMPLAINT AND DEMAND FOR JURY TRIAL

ever disclose to Plaintiffs that Jennings and/or Westmoore was using their money to make principal and interest payments to other investors.   At no time did Jennings or anyone else at Westmoore ever disclose to Plaintiffs that Jennings and/or Westmoore were essentially operating an unregistered investment company (mutual fund or hedge fund) in the State of California, or that Jennings and/or Westmoore were selling unregistered securities in the State of California in violation of state and federal securities laws.

47.   Westmoore and Jennings failed to disclose to investors, including Plaintiffs, that virtually all of the Westmoore businesses were unprofitable and losing money, failing, or worse. Westmoore and Jennings also did not tell investors, including Plaintiffs, that Westmoore had to rely on proceeds from new investors to pay existing investors or to fund the operations of other Westmoore entities.

48.   As Plaintiffs' investments matured, Jennings always convinced Plaintiffs to continue their investment on the same or better terms by rolling over their investment into a new offering with the same or a different Westmoore entity.   However, Plaintiffs were not told about the financial condition of the businesses that they had previously invested in, or the ones they were being rolled into, or that the businesses were losing money or were failing.   By keeping investors like Plaintiffs from cashing out, Westmoore could reduce the demand for cash and delay the collapse of the scheme.   This was clearly the case for Plaintiffs, who were constantly convinced by Jennings to roll over their existing investments with Westmoore into new investments with different Westmoore entities.

49.   On several occasions in 2008, Jennings, without disclosure to investors, transferred money from the Westmoore bank accounts into his own personal accounts, totaling over $300,000.  Upon information and belief, part of

COMPLAINT AND DEMAND FOR JURY TRIAL

1  that money came from Plaintiffs' investments made in Westmoore entities in
2  2008.

3      50.    In late 2008, Defendants suspended interest and principal payments
4  to investors, leaving a note payable balance of approximately $50 million. As of
5  January 2009, due to the withdrawal of Westmoore Securities' registration with
6  the Commission, the offerings ceased. However, Westmoore and its subsidiaries
7  continue to operate under the "Westmoore" brand, managed by Jennings.

**IV.**

**CAUSES OF ACTION**

**1.**

**Negligence/Breach of Duty**

**(Against Jennings and Westmoore Securities)**

13     51.    Defendants Jennings and Westmoore Securities committed gross
14  negligence and violated their duties of care with regard to acting in good faith as
15  the investment advisers and securities brokers for Plaintiffs.  Defendants owed
16  Plaintiffs a professional "duty of care" to oversee their investments, to assist
17  Plaintiffs in reaching their financial goals and to act in Plaintiffs' best interest.
18  Defendants violated these duties by advising Plaintiffs to invest in products (the
19  Westmoore investments) that were entirely unsuitable for Plaintiffs based on their
20  age and investor profile.  A broker's failure to adhere to industry norms and
21  practices relating to suitability and risk disclosure are evidence of a breach of due
22  care.

23     52.    In the instant case, Defendants violated their duties to Plaintiffs at all
24  times.  Instead of acting in the best interests of Plaintiffs, Defendants, particularly
25  Jennings, acted in their own interests and resolved any conflicts of interest
26  between themselves and Plaintiffs in favor of themselves and their Westmoore
27  companies.  Persuading and directing Plaintiffs, who are in their 70s, to invest
28  their retirement savings in the Westmoore companies owned and controlled by

COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants, is a classic conflict of interest.   As such, Defendants committed various acts and/or omissions of negligence which were a proximate cause of Plaintiffs' damages.   Such acts and/or omissions violated the standard of care and the duty owed by securities brokers and investment advisers exercising reasonable prudence.   Each of these acts and/or omissions, singularly or in combination with others, constitute negligence and each proximately caused the damages made the basis of this suit.   Moreover, the negligence of Defendants in violating the standard of care, as set out above, constitutes negligence as a matter of law.

53.   The conduct of Defendants, and each of them, as described herein, constitutes gross negligence and was done with a willful and conscious disregard for the rights of the Plaintiffs.   Said conduct is outrageous and constitutes oppression, fraud and malice entitling Plaintiffs to exemplary and punitive damages in an amount sufficient to make and example of Defendants, and each of them.

## 2.

### Breach of Fiduciary Duty

### (Against Jennings and Westmoore Securities)

54.   As registered investment advisers and/or as brokers exercising discretionary authority, Defendants Jennings and Westmoore Securities owed fiduciary duties to Plaintiffs, including the duty to act in Plaintiffs' best interest as opposed to their own interests, and to recommend investments that were suitable to Plaintiffs given their age and investment risk tolerance.   Defendants breached their fiduciary duties owed to Plaintiffs by their conduct described herein.   Said breaches of fiduciary duty have caused actual and consequential damages to Plaintiffs.

///

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL

### 3.

### Common Law Fraud

### (Against Jennings)

55.    By his conduct described herein, Defendant Jennings committed fraud on Plaintiffs.  In particular, on various occasions prior to Plaintiffs' separate investments, Jennings intentionally misrepresented the safety and soundness, financial strength and nature of risk of the investments in Westmoore that he promoted to Plaintiffs.  When Jennings made the representations to Plaintiffs described herein, he knew them to be false and he knew that Plaintiffs would rely on them because he knew that Plaintiffs trusted and had reposed confidence in Jennings.  Plaintiffs justifiably relied on Jennings' misrepresentations, and had they known the true high risk nature of the investments in Westmoore, Plaintiffs never would have invested their money with Jennings.   As a result of their reliance on Jennings' intentional misrepresentations and concealment of material facts, Plaintiffs have been damaged in an amount approximating $4 million.

56.    Furthermore, Jennings engaged in fraud by non-disclosure by failing to disclose the inherent conflicts of interest he was engaging in by recommending that Plaintiffs invest in companies wholly owned and controlled by himself. Jennings also failed to disclose that he was selling unregistered securities in violation of federal securities law;  that he was comingling and pooling Plaintiffs' investment funds with money from other investors and operating an unregistered investment company (mutual fund or hedge fund) in the State of California; or that he was operating what amounted to a Ponzi scheme in that his entire Westmoore enterprise depended entirely on his obtaining new money in order to pay off existing investors and so keep the scheme alive.   Defendant Jennings generally concealed that he was not acting in Plaintiffs' best interest but was, instead, running a Ponzi scheme designed to benefit only himself.  In doing so, Defendant Jennings concealed or failed to disclose material facts within his knowledge about

which Defendant knew Plaintiffs were ignorant and did not have an equal opportunity to discover the truth; Defendant intended to induce Plaintiffs to take action in the form of continuing a business and investment relationship with Defendant and entrusting their retirement funds to Defendants; and Plaintiffs suffered injury as a result of acting without knowledge of the undisclosed facts.

57.    The conduct of Jennings as described herein was done with a willful and conscious disregard for the rights of the Plaintiffs.  Said conduct is outrageous and constitutes oppression, fraud and malice entitling Plaintiffs to exemplary and punitive damages in an amount sufficient to make and example of Jennings.

### 4.

### Aiding and Abetting Fraud and Breaches of

### Fiduciary Duty/Participation in a Fraudulent Scheme

### (All Defendants)

58.    By their conduct described herein, all Defendants aided and abetted each other and participated in and aided and abetted Jennings' and Westmoore Securities' breaches of fiduciary duty, making all Defendants directly liable for fraud and breach of fiduciary duty.  In particular, Defendants made the conscious decision to participate in the Westmoore Ponzi scheme by joining with Jennings to market and promote investments in Westmoore to prospective clients, including Plaintiffs, and to act as the mechanisms and artifices by which Jennings could to continue to raise money to keep his Ponzi scheme going.  Defendants' actions in aiding and abetting Jennings' fraud and breaches of fiduciary duties and Defendants' participation in the fraudulent scheme are a proximate cause of actual damages to Plaintiffs.

///

///

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL

**5.**

## Conversion and Misapplication of Fiduciary Property and Conspiracy

### (All Defendants)

59.    Defendants knowingly engaged in and aided and abetted and conspired with each other to commit the torts of conversion and misapplication of fiduciary property.  In particular, Plaintiffs owned investment assets that they placed with Defendant Jennings and Westmoore Securities in fiduciary custody for the purchase of securities and Plaintiffs had, or should have had, the immediate right of possession to said securities, cash, and assets.  Defendants Jennings and Westmoore Securities were the custodians for all those assets, including all cash, securities or notes.  Under the instructions of Jennings, Defendants pilfered and converted Plaintiffs' assets to their own benefit through the financial schemes described herein.  Defendants' actions constitute an unauthorized and wrongful assumption and exercise of dominion and control over Plaintiffs' assets that are inconsistent with Plaintiffs' rights.  The other Defendants participated in and aided and abetted Jennings and Westmoore Securities in converting the Plaintiffs' assets by, *inter alia*, voluntarily serving as the mechanisms or artifices Jennings employed to deplete and convert Plaintiffs' investments.  Defendants' actions in converting and misapplying fiduciary property belonging to Plaintiffs, and/or conspiring and participating with Jennings in the conversion of Plaintiffs' assets, are a proximate cause of actual damages to Plaintiffs.

**6.**

## Securities Fraud Under Rule 10b-5(a) and (c)

### (All Defendants)

60.    By their conduct described herein, Defendants have committed securities fraud in violation of Section 10(b) of the Securities Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 (17 C.F.R. §240.10b-5).  Specifically, Defendants directly or indirectly participated in the fraudulent Westmoore Ponzi scheme, with

22

full knowledge that the purpose of the scheme was to assist Jennings to pilfer and steal Plaintiffs' retirement monies.    Each of the Defendants knowingly or recklessly engaged in manipulative conduct in furtherance of the Ponzi scheme. Defendants' participation in the illegal schemes described herein was done knowingly, or exhibited extreme recklessness.  Defendants knew or should have known that helping Jennings effectuate the Westmoore Ponzi scheme was illegal.

61.    The Westmoore Ponzi scheme constituted a "device, scheme or artifice" that perpetrated a fraud on Plaintiffs in relation to the purchase and sale of securities.  Defendants were at the heart of the scheme to run a group of sham entities, Westmoore, and make them appear to be legitimate, when in fact Defendants knew from the beginning that the Westmoore entities existed only as the mechanism through which Jennings could perpetrate a massive Ponzi scheme. As such, Defendants engaged in acts, practices and courses of business which perpetrated a fraud on Plaintiffs in connection with the purchase and sale of securities.  As a direct and proximate result of the Westmoore Ponzi scheme and Defendants' participation in said scheme, Plaintiffs lost their investments of approximately $4 million dollars and are entitled to rescission and/or damages.

## 7.

## Control Person Liability Under 20(a)

62.    Defendant Jennings is also liable as a control person under 20(a) of the Exchange Act for his control over all of the Westmoore entities, including Westmoore Securities, Westmoore Capital and Westmoore Management.    As demonstrated by the SEC's civil action against the Westmoore entities, said entities are liable as primary violators of the Exchange Act. As demonstrated by the factual allegations above, Jennings exercised control over the general operations of all of the Westmoore entities.   Jennings possessed the power to determine the specific acts upon which the underlying violations perpetrated by the Westmoore entities were based.  Jennings had the ability to direct and control,

COMPLAINT AND DEMAND FOR JURY TRIAL

and did direct and control, all of the operations of all of the Westmoore entities. Jennings had direct and indirect influence over the management and operation of the Westmoore entities, and exercised that influence to direct the Westmoore entities to participate in the fraudulent scheme described herein. As a direct and proximate result of Jennings control and influence over the Westmoore entities, Plaintiffs lost their investments of approximately $4 million dollars and are entitled to rescission and/or damages.

## 8.

## Violations of § 12(a)(1) of the Securities Act

### (Against All Defendants)

63.  As more fully set forth above, the Westmoore Holdings shares and the interests in the various Westmoore Notes were offered and sold to Plaintiffs as investment instruments and therefore they constitute "securities" under the *Reves* test. Said securities were never registered. The securities were nonexempted, unregistered securities sold in violation of the federal securities laws. The securities were sold to Plaintiffs without being registered as required by Section 5(a) of the Securities Act, 15 USC 15 § 77e(a), and thus were in violation of the aforementioned statute.

64.  The securities were sold to Plaintiffs as part of an integrated offering under the securities laws, and, on information and belief, involved each of the following factors that made it a public offering and not a private offering exempt from registration:

a. The integrated offering involved general solicitation. This general solicitation by Jennings through Westmoore Securities, Westmoore Management and their other affiliated entities, agents and brokers, included web-based general public advertisements distributed broadly for general distribution in the United States and abroad to offerees and purchasers of the securities.

COMPLAINT AND DEMAND FOR JURY TRIAL

b. The integrated offering involved seminars and meetings conducted in the United States and Mexico. The integrated offering was conducted through the use of sales seminars, "road shows," and meetings directed at potential offerees and purchasers.

c. The integrated offering involved offers to dozens, if not hundreds or even thousands of potential offerees and purchases by numerous offerees involving large sums of money. Upon information and belief Westmoore Holdings alone has sold some 25 million shares to investors to raise $25 million.

d. The offering was made to investors with whom Westmoore Securities and/or Westmoore Management had no pre-existing relationship, through brokers or affiliates of Westmoore Securities who were paid substantial and excessive undisclosed commissions in connection with the sale of the securities.

e. The offering was made to persons who did not qualify as "accredited United States investors"; indeed the vast majority, at least $20 million of the securities, were sold to foreign citizens that did not qualify as "accredited United States investors".

65. Jennings and each of the Defendants personally participated or aided in the offering and sale of the unregistered securities to Plaintiffs and acted as either a "seller" or "offeror" of the securities within the meaning of Section 12(a)(1) of the Securities Act, in that Jennings and each Defendant either owned the securities and then sold and transferred them to Plaintiffs, or Jennings and each Defendant were engaged in direct, personal solicitous behavior towards the Plaintiffs which resulted in the investment in and purchase of the unregistered securities by Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL

66.     Jennings and each Defendant sold the unregistered securities to further their own personal financial interests to the detriment of the interests of the Plaintiffs.

67.     By reason of such wrongful conduct, Jennings and each Defendant are liable pursuant to Section 12(1)(a) of the Securities Act and Plaintiffs are entitled to rescission of their purchases of the securities described herein. As a direct and proximate result of this wrongful conduct, Plaintiffs suffered damages in connection with their purchases of the unregistered securities.

## 9.

## Violations of the California Corporations Code

## (All Defendants)

68.     By their conduct described herein, Defendants have all violated the securities regulatory provisions of the California Corporations Act (the "Act"), including §25110, §25503, §25504, §25401, §25501, and §25502. As alleged by the SEC, the Westmoore notes and other instruments Defendants sold to Plaintiffs qualify as "Securities" under the relevant securities law jurisprudence (e.g., *Reves*), and said securities were not registered, are non-exempt and are not qualified, in violation of §25110 of the Act. All Defendants involved in the sale to Plaintiffs of said unregistered, non-exempt, and unqualified Westmoore securities are liable to Plaintiffs under §25503 of the Act. Jennings and Westmoore Securities are liable for the sale of said unregistered, non-exempt and unqualified securities as control persons under §25504 of the Act.

69.     The offering of the Westmoore securities to Plaintiffs and others was in fact an unregistered public offering made in violation of §25110 of the Act. It was an integrated offering under the securities laws, and, on information and belief, involved each of the following factors that made it a public offering and not a private offering exempt from registration:

COMPLAINT AND DEMAND FOR JURY TRIAL

a.   The integrated offering involved general solicitation. This general solicitation by Jennings through Westmoore Securities, Westmoore Management and their other affiliated entities, agents and brokers, included web-based general public advertisements distributed broadly for general distribution in the United States and abroad to offerees and purchasers of the securities.

b.   The integrated offering involved seminars and meetings conducted in the United States and Mexico. The integrated offering was conducted through the use of sales seminars, "road shows," and meetings directed at potential offerees and purchasers.

c.   The integrated offering involved offers to dozens, if not hundreds or even thousands of potential offerees and purchases by numerous offerees involving large sums of money. Upon information and belief Westmoore Holdings has sold some 25 million shares to investors to raise $25 million.

d.   The offering was made to investors with whom Westmoore Securities and/or Westmoore Management had no pre-existing relationship, through brokers or affiliates of Westmoore Securities who were paid substantial and excessive undisclosed commissions in connection with the sale of the securities.

e.   The offering was made to persons who did not qualify as "accredited United States investors"; indeed the vast majority, at least $20 million of the securities, was sold to foreign citizens that did not qualify as "accredited United States investors".

70.   Moreover, Defendants sold the Westmoore securities to Plaintiffs using untruths or omissions, therefore violating §25401 of the Act and attaching liability under §25501 of the Act. In particular, Defendants Jennings and Westmoore Securities misrepresented to Plaintiffs the nature and risk of the

COMPLAINT AND DEMAND FOR JURY TRIAL

investments in the various Westmoore securities, and also omitted to disclose the inherent conflicts of interest Jennings was engaging in by recommending that Plaintiffs invest in companies wholly owned by himself;  that Defendants were selling unregistered securities in violation of federal securities law;  that Defendants were operating an unregistered investment company (mutual fund or hedge fund) in the State of California; and that Defendants were operating what amounted to a Ponzi scheme in that the Westmoore enterprise depended entirely on Defendants ability to obtain new money in order to pay off existing investors and so keep the scheme alive.  Defendants also omitted to disclose to Plaintiffs the true financial condition of the Westmoore entities they were investing in, and instead promoted the Westmoore companies as being solid and profitable, when in fact Defendants knew that the Westmoore entities were losing money and were failing, and depended entirely on new investor money in order to sustain themselves.   In promoting and selling the Westmoore securities to Plaintiffs, Defendants intentionally or recklessly omitted material facts, including the precarious financial condition of the Westmoore entities.

71.    Furthermore, all Defendants are liable to Plaintiffs for Jennings and Westmoore Securities' primary violations of the Act under the "aider and abettor" provisions of the Act, §25504.1 because they materially assisted Jennings and Westmoore Securities to violate the Act.

72.    As a result of Defendants' conduct, Plaintiffs have lost their investments and are entitled to the statutory remedy of rescission.  Alternatively, Defendants' violations of the Act are a proximate cause of actual damages to Plaintiffs, being their lost investments in the approximate amount of $4 million.

## 10.

## Civil Conspiracy

73.    Defendants conspired with each other and with Jennings and others to commit the wrongful conduct described herein, including fraud, breaches of

COMPLAINT AND DEMAND FOR JURY TRIAL

fiduciary duty, and violations of the Act and the federal securities laws. Defendants are each responsible for all wrongdoing done by each other and the other members of the conspiracy, including Jennings and others, in furtherance of the unlawful conspiracy and enterprise.

74.    Together with Jennings and others, the Defendants conceived, participated in, and implemented a common enterprise to raise money to fund the Westmoore Ponzi scheme for the pecuniary benefit of Jennings.  The object of the conspiracy was to market and promote the Westmoore group of companies as financially sound, prosperous companies that constituted low risk investments for people like Plaintiffs.   There was a meeting of the minds between all Defendants and Jennings and others as to the object to be accomplished, being the sale of debt or equity investment interests in the Westmoore entities and the means for carrying out the scheme. During all relevant times, Defendants, in furtherance of the conspiracy and/or aiding or abetting Jennings in furtherance of the common enterprise, engaged in specific overt acts as described herein, being the acceptance of investor money and issuance of debt or equity investment instruments to Plaintiffs.  Each of the Defendants engaged in overt acts in furtherance of the Westmoore Ponzi scheme and effectuated their illicit scheme through and with the assistance and cooperation of Jennings and others. Defendants' conspiracy with each other and with Jennings is a proximate cause of rescission and/or actual damages to Plaintiffs, including the loss of their $4 million investment.

**11.**

**Fraudulent Conveyance under Cal. Civ. Code § 3439.05**

**(Against All Defendants)**

75.    Upon Jennings and the Defendants defaulting under the Notes as described above, Jennings and the Defendants, jointly, severally, and unconditionally, became debtors to Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL

76.    Upon information and belief, prior to and during the period in which Jennings and Defendants have been debtors to the Plaintiffs, they have transferred assets, paid dividends or distributions, paid commissions, and/or made other payments to all or some of the other Defendants in addition to prior investors, as described above.

77.    Upon information and belief, Jennings and Defendants will continue to transfer assets and make and make payments to some or all of the Defendants including prior investors during the pendency of this action.

78.    Upon information and belief, and pursuant to Cal. Civ. Code § 3439.04(a)(1), some or all of the transfers were made or will be made by Jennings and Defendants with the intent to defraud plaintiffs or to hinder or delay its ability to collect on debts owed to Plaintiffs by Jennings and Defendants.

79.    Alternatively, upon information and belief and pursuant to Cal. Civ. Code § 3439.04(a)(2), prior to and during the time period in which Jennings and Defendants have been indebted to Plaintiffs, Jennings and the Defendants failed to receive reasonably equivalent value in exchange for some or all of the transfers and payments at a time when Jennings' and Defendants' remaining assets were unreasonably small in relation to the business in which it was engaged or at a time when Jennings' and Defendants' incurred, or believed or reasonably should have believed that it would incur, debts beyond the ability to pay as they become due, such as payments to prior investors.

80.    Alternatively, upon information and belief and pursuant to Cal. Civ. Code § 3439.05, prior to and during the time period in which Jennings and Defendants have been indebted to Plaintiffs, Jennings and the Defendants failed to receive reasonably equivalent value in exchange for some or all of the transfers and payments at a time when Jennings and Defendants were insolvent or became insolvent as a result of transfers or payments, such as to prior investors.  As a direct and proximate result of Jennings' and Defendants' fraudulent conveyance in

COMPLAINT AND DEMAND FOR JURY TRIAL

violation of California law, Plaintiffs have substantial damages in an amount to be proven at trial, but not less than $4 million.

## 12.

## <u>Breach of Contract/Suit on a Note</u>

81.    As alleged herein, Plaintiffs invested millions of dollars in the various Notes issued by Westmoore Capital, Westmoore Management, and Westmoore Lending.  Each and every one of the Notes is in default because the respective Westmoore companies failed to pay Plaintiffs when the Notes matured.  Plaintiffs have repeatedly demanded payment from the debtors and said demands have gone unfulfilled.

82.    Plaintiffs are now, and at all times material to this action were, the lawful owners of the Notes for which Jennings and Defendants are indebted.  Plaintiffs have performed all of the terms and conditions on its part pursuant to the terms of the Notes.  Jennings and Defendants materially breached their obligations to Plaintiffs by failing to make full payment for the amounts due and owning under the terms of the notes.  Plaintiffs are informed and believe and on that basis allege that, as a proximate result of Jennings' and Defendants' default under the terms of the Notes, Plaintiffs have incurred and will continue to incur damages, charges, attorneys' fees and other costs in a sum not yet ascertained.  Accordingly, Plaintiffs are informed and believe, and on that basis allege that there will be further interest, legal expenses, and other indebtedness due and owing in an amount to be determined at the time of trial.

83.    Plaintiff Joaquin de Teresa also seeks to judicially foreclose on the "first priority" security interest lien he holds as to the 2 million shares of China Tel Group Inc. owned by Westmoore Capital Group.

///

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL

**13.**

## Action to Dissolve Rockwall Holdings Inc. f/k/a Westmoore Holdings, Inc.

84.    As substantial shareholders holding 2.35 million of the outstanding shares of Rockwall Holdings Inc. f/k/a Westmoore Holdings Inc., Plaintiffs also seek to judicially dissolve Rockwall Holdings Inc. f/k/a Westmoore Holdings Inc., because said company is no longer operating as a profitable enterprise, and its Board of Directors refuses to communicate with Plaintiffs and the other shareholders, and therefore the legitimate business goals of the Company cannot be achieved, and the Company appears to be operating as a sham or fraud without any controls whatsoever.  Plaintiffs request that said Company be ordered into liquidation by judicial decree and that its assets and liabilities be accounted for; its assets liquidated to pay its liabilities and any remaining assets be distributed to the shareholders, including Plaintiffs.

**V.**

## STATUTE OF LIMITATIONS DEFENSES

### Discovery Rule/Inquiry Notice

85.    The SEC filed an enforcement action against Defendants on June 15, 2010, alleging that Defendants had perpetrated a massive Ponzi scheme on Plaintiffs and others.  Plaintiffs did not discover, and could not with the exercise of reasonable diligence have discovered, the true nature of the fraud (and injury caused by said fraud) committed by Defendants until then.   Moreover, the wrongful acts and conspiracy by Defendants were inherently undiscoverable, and Plaintiffs were not aware of facts that would have put them on inquiry notice as to Defendants fraud and conspiracy, at the earliest, June 15, 2010.

**VI.**

## JOINT ENTERPRISE/SINGLE BUSINESS ENTERPRISE

86.    A joint enterprise or single business enterprise existed between the various companies within the Westmoore group, all of which operated as, and

COMPLAINT AND DEMAND FOR JURY TRIAL

were marketed and sold to the investing public as, "Westmoore".   The joint enterprise or single business enterprise consisted of, *inter alia*, all of the Defendants named herein as well as the defendants named in the SEC action and others.   There existed an express or implied agreement between the above described entities and their principals concerning the establishment and administration of the joint enterprise/single business enterprise; a common purpose to be carried out by the above described entities and their principals, being the reaping of fees and profits from the illicit activities of the joint enterprise/single business enterprise; a community of pecuniary interest among the above described entities and their principals; and the above described entities and their principals shared in the management and direction of the joint enterprise/single business enterprise.   Thus, a joint enterprise or single business enterprise existed between and among the above described entities and their principals, which is responsible for the fraudulent acts described herein, making them all jointly and severally liable for the fraudulent acts described herein.

## VII.

## <u>ALTER EGO</u>

87.   Jennings is directly liable for the acts and omissions of the Westmoore corporate entities sued herein for the reason that the various Westmoore Defendants are the alter egos of Jennings and a conduit by which Jennings conducted the business, including the schemes, described herein. Specifically, Jennings owns, controls, and dominates all of the Westmoore Defendants to such an extent that they have no separate interests of their own and in reality function as the mere alter ego of Jennings.

88.   The Defendants operate out of the same locations and/or have their registered agent for service of process out of only a few locations, as described above.  Also, upon information and belief, Jennings and Defendants use the same offices, same phone numbers, same facsimile numbers, same accountants, same

COMPLAINT AND DEMAND FOR JURY TRIAL

employees, and same attorneys.  Further, the Defendant entities issue reports and communications through a single website www.westmooreinc.com, without making any distinction between the various Defendants and with whom a particular client is dealing.

89.    Plaintiffs also allege that Jennings commingled finances, files, employees, advertising and funding freely from one shell Defendant to the next. Plaintiffs, as described above, allege upon information and belief that Jennings is an owner, executive officer, managing agent, and/or director of each and every Defendant and completely dominates all of the Westmoore corporate Defendants. The creation of several shell corporations, companies and partnerships, the Defendants, enabled Jennings to continue perpetrating his Ponzi-like scheme.

90.    Because Defendants were at all relevant times merely the alter egos of one another, Jennings and the Defendants are liable to Plaintiffs for damages under the Notes and on all tort claims asserted by Plaintiffs in this Complaint.

# VIII.

# ACTUAL DAMAGES

91.    Plaintiffs have suffered the loss of well in excess of $4 million that was proximately caused by the wrongful conduct of Defendants described herein. Because a Ponzi scheme depends for its survival on constant and continuous infusions of new money to pay off old investors and so lure new ones, Defendants are all jointly and severally liable for all of the losses suffered by Plaintiffs because all the Defendants served as key links in the Ponzi scheme and all participated in luring new infusions of money from Plaintiffs.  In addition, Plaintiffs are entitled to recover their just and reasonable attorneys' fees, for it would be inequitable not to award such fees to them.  Plaintiffs have retained the undersigned attorneys and have agreed to pay them a reasonable attorneys' fee for their work.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

# IX.

## PUNITIVE DAMAGES

92.    The wrongful conduct set forth herein constitutes fraud or malice, willful acts or omissions, or gross negligence and therefore Plaintiffs are entitled to recover punitive damages in an amount necessary to punish the Defendants and to deter similar conduct of others in the future.

93.    All conditions precedent to filing this Complaint have been met.

## PRAYER

WHEREFORE, Plaintiffs pray the Defendants be summoned to answer this Complaint, and that the case be tried before a jury and that upon final judgment Plaintiffs recover their damages as alleged herein, including their actual damages, punitive damages, and their costs and expenses of suit, including reasonable attorneys' fees.   Plaintiffs also pray for judicial foreclosure of their security interests in the ChinaTel stock held by Westmoore Capital, and for the judicial Dissolution of Rockwall Holdings f/k/a Westmoore Holdings.  Plaintiffs pray for such other relief to which they may be justly entitled.

Dated:  December 1, 2010              **THE COOPER LAW FIRM, P.C.**

By:  _____
       Scott B. Cooper
       Counsel for Plaintiffs

## JURY DEMAND

Plaintiffs demand a trial by jury to the extent permitted by law.

Dated:  December 1, 2010              **THE COOPER LAW FIRM, P.C.**

By:  _____
       Scott B. Cooper
       Counsel for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Joaquin de Teresa and Ana Alicia Aguilar de Teresa | Matthew R. Jennings; Rockwall Holdings, Inc.; Westmoore Capital Group, LLC; Westmoore Management, LLC; Westmoore Lending Opportunity Fund, LLC; and Westmoore Securities, Inc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Scott B. Cooper, THE COOPER LAW FIRM, P.C., 2030 Main Street, Suite 1300, Irvine CA 92614, (949) 724-9200 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☒ 810 Selective Service | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 240 Torts to Land | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## SACV10-01830 DOC (MLGx)

FOR OFFICE USE ONLY:  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 2:10-CV-04837-AG-MLG

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
   ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Mexico |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| SEE ATTACHMENT |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date 12/1/10

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## ATTACHMENT TO UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA CIVIL COVER SHEET

IX. Venue:

(b)

Westmoore Capital Group, LLC; and Westmoore Securities, Inc.: Orange

Matthew R. Jennings; Westmoore Management, LLC; and Westmoore Lending Opportunity Fund, LLC:  Riverside

Rockwall Holdings, Inc.: Los Angeles

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1830 DOC  (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

═══════════════════════════════════════════════════

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Scott B. Cooper, Esq. SBN 174520
THE COOPER LAW FIRM, P.C.
2030 Main Street, Suite 1300
Irvine, CA 92614
scott@cooper-firm.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| JOAQUIN de TERESA and ANA ALICIA AGUILAR de TERESA, <br><br> PLAINTIFF(S) <br><br> v. <br><br> SEE ATTACHMENT <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **SACV10-01830 DOC (MLGx)** <br><br><br> **SUMMONS** |
|---|---|

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Scott B. Cooper_____, whose address is _2030 Main Street, Suite 1300, Irvine CA 92614_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __Dec. 1 2010__

By: _____

                    **AMY DeAVILA**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

---

# ATTACHMENT TO UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA SUMMONS

MATTHEW R. JENNINGS; ROCKWALL HOLDINGS, INC.; WESTMOORE CAPITAL GROUP, LLC; WESTMOORE MANAGEMENT, LLC; WESTMOORE LENDING OPPORTUNITY FUND, LLC; and WESTMOORE SECURITIES, INC.,

Defendants,

1